## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

MICHAEL J. BUTT,                          )
                                   )
        Plaintiff,                       )
                                   )
        v.                               )      CAUSE NO.: 2:12-CV-189-TLS
                                   )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security          )
Administration,                          )
                                   )
        Defendant.                       )

## OPINION AND ORDER

The Plaintiff, Michael J. Butt, brought this action pursuant to 42 U.S.C. § 405(g) seeking

review of the Commissioner's final decision denying his application for disability insurance

benefits. On October 30, 2012, the Plaintiff filed his Opening Brief [ECF No. 17]. The

Defendant filed a Memorandum in Support of the Commissioner's Decision [ECF No. 23] on

February 5, 2013, and the Plaintiff filed a Reply [ECF No. 24] on February 19.


## BACKGROUND

The Plaintiff applied for disability insurance benefits in January 2009, alleging an onset

date of January 5, 2005. The Commissioner denied the claim on July 21, 2009, and denied the

claim upon reconsideration on February 22, 2010. The Plaintiff requested a hearing before an

Administrative Law Judge (ALJ). On December 13, 2010, ALJ Sherry Thompson conducted a

hearing in this matter. Present were the Plaintiff, his attorney, Vocational Expert (VE) Dewey

Franklin, and the ALJ. The Plaintiff and the VE both testified, and the ALJ accepted into

evidence numerous exhibits. The hearing took about 47 minutes.

On January 26, 2011, the ALJ issued her Decision Denying Benefits [ECF No. 25 at

16–23]. The Appeals Council denied review on March 19, 2012, making the ALJ's decision the

final decision of the Commissioner. The Plaintiff then timely filed this civil action for review of

the Commissioner's decision under 42 U.S.C. § 405(g).

## THE ALJ'S DECISION

The ALJ applied the familiar five-step process for determining whether an applicant

meets the definition of disability contained in the Social Security Act. *See Craft v. Astrue*, 539

F.3d 668, 673–74 (7th Cir. 2008); 20 C.F.R. § 404.1520. At step one, the ALJ found that the

Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two,

she found that the Plaintiff had two severe physical impairments—congestive heart failure and

obesity. At step three, the ALJ found that neither of the Plaintiff's severe conditions met or

equaled one of the listed impairments considered to be conclusively disabling. At step four, she

found that the Plaintiff maintained the residual functional capacity (RFC) to perform work

activity as follows:

> I find that, through the date last insured, the claimant had the residual functional
> capacity to perform less than a full range of light work, as defined in 20 CFR
> 404.1567(b). The claimant can lift and/or carry 10 pounds frequently, 20 pounds
> occasionally, and is unlimited in his ability to push and pull. The claimant can sit,
> stand, and/or walk for up to 6 hours in an 8-hour workday. The claimant can perform
> occasional overhead bilateral reaching using both shoulders. The claimant should
> avoid concentrated exposure to extreme cold, extreme heat, fumes, gases, dust,
> odors, vibration, and poorly ventilated environments. The claimant should also avoid
> concentrated exposure to hazardous machinery and unprotected heights. The
> claimant should avoid even moderate exposure to hazards, such as slippery surfaces.

(Decision Denying Benefits 16, ECF No. 25 at 20.) In support of this RFC, the ALJ considered

the Plaintiff's testimony. Specifically, the Plaintiff testified about his 2007 diagnosis of

congestive heart failure; his obesity (349 pounds in 2009); his ability to lift only 10–15 pounds;

his ability to walk only half a block; his ability to stand for only 5 minutes; his difficulty bending or stooping because of his bad knees; his need to elevate his legs when he sits; his ability to sit for 15 minutes in a hard chair and 30 minutes in a soft chair; his medications, including Lasix, a "water pill" used to reduce swelling and fluid retention; drowsiness brought on as a side effect of some of his medications; and his daily activities, including vacuuming once a week, occasional dusting, preparing meals, and mowing the lawn on a riding lawn mower. The ALJ also considered the medical documentation of: mild osteoarthritis in the Plaintiff's left knee in 2006 and again in 2009; degenerative joint disease in the Plaintiff's right shoulder, corrected by surgery in 2010; and a continuing, painful back condition. After consideration of all of this evidence, the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> In terms of the claimant's allegations concerning his severe impairments, the claimant is found to be not fully credible. The objective medical evidence corroborates the presence of his alleged severe impairments and the therapeutic and surgical measures that have been taken to minimize their effects. However, the claimant's subjective complaints regarding his pain and the functional limitations resultant from it are not found to be consistent with the documented improvement of the conditions that has historically caused the claimant's pain. Furthermore, the claimant's daily activities, although notably limited, show a retained level of functionality that indicates the claimant could work successfully within the parameters of the above RFC. Considering the diagnostic studies showing mild findings in the left knee joint, mild degenerative changes of the thoracic spine and broad based disc bulging without stenosis or neural foraminal compromise (Exhibit 18F) and the claimant's testimony, he can perform the prolonged walking, standing and sitting for light work activity. Further, the consultative examiner found the claimant had a normal gait, normal strength and normal ability to perform fine and gross manipulative activities. (Exhibit 6F).

(Decision Denying Benefits 17–18.) The ALJ also considered opinion evidence, giving great

3

weight to the State Agency's Disability Determination Service medical consultants, who found

the Plaintiff "to have the same exertional capacity as articulated in the above RFC." (*Id.* 18.)

Also at step four, the ALJ found that, based on this RFC, the Plaintiff could still perform

the activities required for his past relevant work as a 911 dispatcher, and therefore found the

Plaintiff not disabled. Specifically, the ALJ stated:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as actually and generally performed. The claimant's testimony led the testifying vocational expert to conclude that even if the claimant's RFC further restricted him to sedentary work, he would remain capable of performing this past work. The claimant retains the skills and mental capacity to execute the duties of the job.

(Decision Denying Benefits 18–19.) Because the ALJ found that the Plaintiff could perform his

past relevant work, she did not proceed to step five.


## ISSUES FOR REVIEW

The Plaintiff's Opening Brief raises the following issues for this Court's consideration:

(1) whether the ALJ failed to consider the combined impact of all of the Plaintiff's ailments; (2)

whether the ALJ failed to consider the Plaintiff's obesity in formulating his RFC; (3) whether the

ALJ's RFC assessment fails to explain why she discounted the Plaintiff's testimony about his

limitations; (4) whether the ALJ failed to properly compare the Plaintiff's past job duties with

his RFC; (5) whether the ALJ properly evaluated the credibility of the Plaintiff's testimony

regarding his limitations; (6) whether the ALJ constructed a logical bridge from the evidence to

her RFC finding; and (7) whether the ALJ failed in her step three analysis by applying the wrong

section of the regulation. Because the Court agrees with the Plaintiff that many of these issues

merit further consideration, the Court will remand this case to the Commissioner for proceedings

consistent with this Opinion and Order.

## DISCUSSION

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The Court reviews the ALJ's conclusions of law *de novo*. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments

must be of such severity that she is not only unable to do her previous work but cannot,

considering her age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d

at 673.

> The first step considers whether the applicant is engaging in substantial gainful
> activity. The second step evaluates whether an alleged physical or mental impairment
> is severe, medically determinable, and meets a durational requirement. The third step
> compares the impairment to a list of impairments that are considered conclusively
> disabling. If the impairment meets or equals one of the listed impairments, then the
> applicant is considered disabled; if the impairment does not meet or equal a listed
> impairment, then the evaluation continues. The fourth step assesses an applicant's
> [RFC] and ability to engage in past relevant work. If an applicant can engage in past
> relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well
> as his age, education, and work experience to determine whether the applicant can
> engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v.*

*Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The Commissioner bears the burden of proof at the

fifth step and must present evidence establishing that the applicant possessed the RFC to perform

work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A);

*Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009). Where an ALJ fails to properly evaluate

the evidence and fails to follow Social Security Rulings, "remand is in order." *Campbell v.*

*Shalala*, 988 F.2d 741, 744 (7th Cir. 1993).

Here, the findings being challenged are those related to the ALJ's step three listing

determination, and the ALJ's step four determination of the Plaintiff's RFC and his ability to

perform his past relevant work. The Court will consider the Plaintiff's challenges in the order he presents them.

**A.      Alleged Failure to Consider Combined Impact of Plaintiff's Impairments**

The Plaintiff argues, first, that the ALJ failed to consider the combined impact of his impairments in developing his RFC. He states that, in addition to congestive heart failure and obesity, he "suffers from a constellation of other impairments including: severe obstructive sleep apnea with periodic limb movement disorder; diabetes, at times uncontrolled; chronic obstructive pulmonary disease; bilateral knee, neck, and back impairments; bilateral shoulder difficulties; bilateral carpal tunnel syndrome; neuropathy; stress disorder; and foot drop." (Opening Br. 10, ECF No. 17.) The Plaintiff argues that where an ALJ's decision fails to mention many relevant impairments, the decision cannot stand. The Defendant responds that the ALJ appropriately considered the combined impact of the Plaintiff's impairments. Specifically, the ALJ stated that the Plaintiff's impairments, "whether considered individually or in combination, do not meet or medically equal any listings." (Decision Denying Benefits 16.) The Defendant insists this statement by the ALJ is sufficient. The Defendant also argues that the Plaintiff has failed to show how any of his impairments in combination caused limitations greater than those found by the ALJ. The Plaintiff replies that the ALJ's statement about the combination of impairments is not sufficient where the ALJ failed to mention evidence favorable to the Plaintiff, including diagnosed medical impairments. The Plaintiff also replies that he sufficiently articulated how the combination of his impairments limits his ability to work.

A reviewing court will not uphold an administrative decision that "fails to mention highly

pertinent evidence." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). Further, an ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). *See also Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (stating that an ALJ must provide at least minimal analysis of the evidence "to permit an informed review").

In assessing RFC, "an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling."); *Parker*, 597 F.3d at 923 ("The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error."). An ALJ may fulfill her obligation to consider the aggregate effects of a claimant's impairments by stating that she has considered the impairments both singly and in combination. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *see also Douglass v. Colvin*, No. 12 CV 504, 2013 WL 1828819, at *12 (N.D. Ill. Apr. 30, 2013) (citing *Getch*, and stating that an ALJ may discharge his duty to consider the combination of a claimant's conditions by "noting that the claimants' health problems are not severe enough 'either singly or in combination' to be disabling and by emphasizing that he has considered all of the symptoms together"). However, even where an ALJ states that she has considered the entire "combination of impairments," *Arnett v. Astrue*, 676 F.3d 586, 590 (7th Cir. 2012), a reviewing court may still remand because the ALJ fails to mention relevant evidence or consider the combined impact of all impairments taken together, *id.* at 591–94. *See Zurawski*, 245 F.3d at 886, 888–89 (remanding

despite ALJ's use of "combinations of impairments" language because the reviewing court was "unable to discern whether she considered the record as a whole").

The Court finds that the ALJ's failure to mention evidence favorable to the Plaintiff, and failure to articulate how the combination of the Plaintiff's impairments affects his ability to function, merits a remand. As the Plaintiff notes, the ALJ's Decision made no mention of his obstructive sleep apnea with periodic limb movement disorder, his diabetes, his chronic obstructive pulmonary disease, his bilateral carpal tunnel syndrome, his neuropathy, his stress disorder, or his foot drop. Further, the Plaintiff points out the ALJ's failure to address most of his impairments in combination with each other.[1] Although it is possible for an ALJ to adequately address all impairments by stating that she has considered them all singly and in combination, *Getch*, 539 F.3d at 483, the ALJ has an obligation not to ignore evidence favorable to the Plaintiff, *Arnett*, 676 F.3d at 592–93, and to consider the cumulative effect of the impairments, *Parker*, 597 F.3d at 923. The ALJ did not mention that the Plaintiff was diagnosed with a stress disorder in 2008. (Midwest Clinic Exam Notes, ECF No. 25 at 405.) According to the Plaintiff's testimony, his inability to handle stress was part of the reason the police chief asked him to leave his job in 2005. (December 13, 2010, Hr'g Tr. 19, ECF No. 25 at 48.) The ALJ also did not mention the Plaintiff's sleep apnea, nor how his obesity might have contributed to the fatigue resulting from sleep apnea. The ALJ did not discuss how congestive heart failure and chronic obstructive pulmonary disease can lead to fatigue, nor the Plaintiff's testimony that his pain

---

[1]As discussed below, the ALJ stated that she did consider the Plaintiff's obesity in conjunction with his other impairments (*see* Decision Denying Benefits 15–16), though she did not explain her findings. But the Plaintiff specifically outlines the ALJ's failure to consider the impact of: his neuropathy and foot drop with his chronic obstructive pulmonary disease; his congestive heart failure with his chronic obstructive pulmonary disease; his diabetes, hypertension, and stress disorder with his other conditions; and his carpal tunnel difficulties with his shoulder problems.

medications cause drowsiness. The Plaintiff testified that his difficulty concentrating was another reason the police chief asked him to leave his job. (Hr'g Tr. 19.) The ALJ did state that the Plaintiff "retains the . . . mental capacity to perform work under the prescribed restrictions." (Decision Denying Benefits 18.) But it is not clear what basis she relied upon for that finding. *See Zurawski*, 245 F. 3d at 888 ("we are unable to discern whether she considered the record as a whole"). Evidence in the record suggested that the Plaintiff's problems with concentration and stress led to his inability to continue in his job. Indeed, at the hearing the VE testified that the Plaintiff would be unable to perform his past relevant work if he were limited to a job requiring minimal concentration. (Hr'g Tr. 48, ECF No. 25 at 52.) Without some discussion of the evidence favorable to the Plaintiff, or how his impairments in combination affect his ability to work, the Court must remand for reconsideration.[2]

As to the Defendant's argument that the Plaintiff failed to show how his impairments in combination caused limitations greater than those found by the ALJ, the Court finds that the Plaintiff sufficiently articulated this point in his Opening Brief. He discussed the cumulative effect of his impairments on walking and standing, fatigue and tiredness, stress difficulties, and manipulation difficulties. This is sufficient. *See Arnett*, 676 F.3d at 593 (finding that the claimant overcame the Commissioner's waiver argument by devoting "several pages of her brief to arguing that the ALJ did not fully evaluate all of her impairments").

For all the reasons discussed, the Court finds that remand is appropriate so that the ALJ

---

[2]The Plaintiff also argues the ALJ's failure to mention his bilateral carpal tunnel syndrome merits remand. The ALJ did state, however, that "the consultative examiner found the claimant had . . . normal ability to perform fine and gross manipulative activities" (Decision Denying Benefits 18), and it appears she relied upon this finding. The Plaintiff does not argue that the ALJ lacked a basis to rely upon this finding. Accordingly, the Court is not persuaded by the Plaintiff's argument relating to his alleged dexterity issues.

can properly consider the cumulative effect of the Plaintiff's impairments.

**B.**      **Alleged Failure to Consider Obesity with Respect to the RFC**

The Plaintiff argues, second,[3] that the ALJ failed to consider the Plaintiff's obesity as part of his RFC finding, as mandated by Social Security Ruling 02-1p. The Defendant responds that the ALJ considered obesity at length in her Decision, and that the ALJ relied on the opinions of the state agency doctors, who were aware of the Plaintiff's obesity, in her RFC finding. The Defendant also argues that the Plaintiff has not shown how his obesity further impaired his ability to work. The Plaintiff replies that the ALJ failed to consider obesity in conjunction with her RFC analysis, that the ALJ could not rely on the opinions of the state agency doctors because significant medical evidence came into the record after their review of the case, and that, as above, the Plaintiff's multiple arguments about his obesity in conjunction with other limitations are sufficient to show how obesity limited his ability to work.

Social Security Ruling 02-1p states as follows concerning assessing obesity as part of an RFC: "The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *6–7 (Sept. 12, 2002). Further, the SSR mandates that ALJs "explain how [they] reached . . . conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7. As the Seventh Circuit stated in *Arnett*, "[a]n ALJ must factor in obesity when determining the aggregate impact of an applicant's impairments." 676 F.3d at 593. *See also Villano v. Astrue*,

---

[3]This argument is embedded in the Plaintiff's combined impact argument, but the Court finds that it is a separate issue worthy of separate analysis.

11

556 F.3d 558, 563 (7th Cir. 2009) (stating that "the ALJ failed to analyze the combined effect of

[the plaintiff's] obesity and her other impairments"). An ALJ may rely on the opinions of

consulting physicians in determining whether a claimant's obesity affected other impairments.

*See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005). Where a claimant "does not

specify how his obesity further impaired his ability to work," and where "the ALJ adopt[s] the

limitations suggested by the specialists and reviewing doctors, who were aware of [the

claimant's] obesity," any failure to explicitly consider obesity in the RFC is harmless. *Skarbek v.*

*Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

The Court agrees with the Plaintiff that the ALJ failed to adequately explain her

consideration of his obesity, and how it affected his other impairments. The Defendant urges that

because the ALJ discussed obesity in step three, she must have considered it in step four. Indeed,

in her Decision, she states that she considered the Plaintiff's obesity "during the sequential

evaluation at Step 3, Step 4, and Step 5." (Decision Denying Benefits 16, ECF No. 25 at 20.)[4]

The ALJ's consideration of the Plaintiff's obesity at step three, however, consisted of little more

than a boilerplate recitation of factors to consider regarding obesity in general, not the Plaintiff's

obesity specifically. Besides finding that the Plaintiff's obesity is a severe impairment, meaning

it significantly limits his physical or mental ability to do basic work activities, the ALJ appears

to have made no specific finding regarding the Plaintiff's obesity, despite several paragraphs

devoted to the topic. (*See* Decision Denying Benefits 15–16.) She concluded the discussion of

obesity with a finding, apparently related to all impairments including obesity, that "the

claimant's impairments, whether considered individually or in combination, do not meet or

---

[4]The reference to step 5 appears to be an error, as the ALJ did not reach step 5 in this case.

12

medically equal any listings." (*Id.* 16.) This is an insufficient treatment of the Plaintiff's obesity. As the *Arnett* court stated, "[i]f the ALJ thought that [the claimant's] obesity has not resulted in limitations on [his] ability to work, [s]he should have explained how [s]he reached that conclusion." 676 F.3d at 593. SSR 02-1p emphasizes the need for ALJs to explain why obesity, in combination with other impairments, does not affect the RFC. The ALJ offered no explanation for her obesity determination in step three, and no reference to obesity in her RFC analysis. Absent such explanation, remand is appropriate.

      The Court is not persuaded by the Defendant's arguments. As the Plaintiff notes, additional evidence regarding his impairments emerged after the state agency physicians reviewed his case file. Thus, the ALJ could not rely on the opinions of the physicians in lieu of explaining the Plaintiff's obesity in her RFC finding. *See Arnett*, 676 F.3d at 593 (ALJ's failure to discuss obesity was not harmless where the ALJ relied on the opinions of physicians who did not fully consider the claimant's obesity). Further, the Plaintiff has sufficiently outlined the impact of his obesity on his ability to work by noting the combined impact of obesity and congestive heart failure, obesity and chronic obstructive pulmonary disorder, obesity and joint related impairments, and obesity and arthritis. *See id.* Because the Plaintiff has specified how his obesity impairs his ability to work, *Skarbek*, 390 F.3d at 504, and because the state reviewing physicians could not have provided the ALJ a full picture of the Plaintiff's impairments, remand for an explanation of how obesity impacts the RFC is appropriate.

      For the foregoing reasons, the Court will remand this matter for the ALJ to explain how obesity does or does not affect the Plaintiff's RFC.

**C.      Alleged Failure to Discuss Why the Plaintiff's Testimony is Inconsistent with the Medical Evidence**

The Plaintiff argues, third, that the ALJ failed to discuss why she did not accept his testimony concerning his functional limitations, in violation of SSR 96-8p. Specifically, the Plaintiff points to the ALJ's failure to discuss his leg swelling and need to elevate his leg, his ability to stand for no more than 5 minutes at a time and sit for no more than 15–30 minutes at a time, and his tiredness and fatigue. The Defendant responds that evidence in the record contradicted the Plaintiff's testimony about elevating his leg, and that no medical evidence supported the Plaintiff's testimony about fatigue or sitting and standing limitations. The Plaintiff replies that the Defendant's argument about leg raising is barred by the *Chenery* doctrine because the ALJ did not rely upon it in her Decision. Further, the Plaintiff replies that his testimony to these functional limitations is evidence, and the ALJ's failure to explain her rejection of his testimony pursuant to SSR 96-8p requires a remand.

Social Security Ruling 96-8p states that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, Titles II and XVI: Assessing Residual Functional Capacity, 1996 WL 374184, at *7 (July 2, 1996). Failure to follow SSR 96-8p is "in itself . . . sufficient to warrant reversal of the ALJ's decision." *Briscoe*, 425 F.3d at 352. A claimant's testimony about her limitations is evidence of those limitations. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("but she did produce evidence in the form of her own testimony").

Under the *Chenery* doctrine, the Commissioner is barred from defending the ALJ's decision using a rationale that "the ALJ did not employ . . . in his opinion." *Roddy v. Astrue*, 705

14

F.3d 631, 637 (7th Cir. 2013) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)). *See also Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("[T]hese are not reasons that appear in the ALJ's opinion, and thus they cannot be used here.")

The Court finds that the ALJ's Decision complied with SSR 96-8p because it included a discussion of why the limitations noted by the Plaintiff in his testimony are not consistent with the evidence of record. The ALJ stated that "[i]n terms of the claimant's allegations concerning his severe impairments, the claimant is found to be not fully credible." (Decision Denying Benefits 17.) The ALJ also stated that "the claimant's subjective complaints regarding his pain and the functional limitations resultant from it are not found to be consistent with the documented improvement of the conditions that has historically caused the claimant's pain." (*Id.* 17–18.) The Court will discuss the substance of the ALJ's credibility determination and logical bridge below. But for the purposes of SSR 96-8p, it appears the ALJ discussed why the Plaintiff's claimed limitations are not consistent with the evidence.

The Plaintiff is correct that the Defendant's argument about his leg raising being contradicted by the record would be barred by the *Chenery* doctrine because it does not appear in the ALJ's Decision. Further, it appears the Plaintiff is also correct that the ALJ had an obligation to address his testimony concerning his limitations even though no other evidence corroborated his testimony. But because the Court finds that the ALJ did not violate SSR 96-8p, the Defendant's arguments and the Plaintiff's responses are moot. The Court will not remand for further consideration of this issue because the Plaintiff has failed to show a violation of SSR 96-

8p.

### D.     Alleged Failure to Properly Assess Whether the Plaintiff Can Perform His Past Relevant Work

The Plaintiff argues, fourth, that the ALJ failed to set forth the duties of his past relevant work, and failed to properly analyze his ability to perform those duties. Specifically, the Plaintiff points to the ALJ's failure to compare his difficulties with concentration, his inability to handle stress, his need to change position and use the bathroom often, his finger dexterity issues, his fatigue, and his need to elevate his legs with the duties of a 911 dispatcher. The Defendant responds that, in her determination that the Plaintiff could perform his past relevant work, the ALJ properly relied on the VE's testimony. The Plaintiff replies that "vocational expert testimony does not absolve the ALJ of her legal obligation to properly compare the requirements with Plaintiff's abilities." (Reply 11, ECF No. 24.)

"[T]he ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks." *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991). *See also Prince v. Sullivan*, 933 F.2d 598, 602–03 (7th Cir. 1991) (holding that an ALJ must comply with SSR 82-62 and make a finding of fact about whether an individual's RFC would allow him to return to his past job); *Gonzalez v. Astrue*, No. 1:10-cv-00899-DML-TWP, 2011 WL 4538081, at *12 (S.D. Ind. Sept. 29, 2011) (applying the *Nolen* rule to an ALJ's insufficient consideration of the requirements of a claimant's past relevant work). Where an ALJ fails to consider whether a claimant can "perform the duties of the specific jobs that she had held," remand is appropriate. *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).

The Court agrees with the Plaintiff that the ALJ failed to specify the duties involved in

16

his prior job, and failed to discuss how the Plaintiff would be capable of performing them. The

VE testified that an individual with the Plaintiff's RFC (as stated by the ALJ) could perform the

duties of a 911 dispatcher, as that position is described in the Dictionary of Occupational Titles.

The VE also testified that if the Plaintiff were limited to sedentary work with his RFC he would

be able to perform a 911 dispatcher's duties, but that if he were limited to a job that required

minimal concentration he would not. On cross examination, the Plaintiff's counsel elicited

testimony from the VE that a 911 dispatcher would need good bilateral use of the hands, good

concentration, the ability to act quickly under stressful situations, and the ability to multitask,

and that needing frequent bathroom breaks because of medication could impact the ability to do

the job. On redirect, the ALJ elicited testimony from the VE that a 911 dispatcher could probably

not alternate sitting and standing within every hour, but that it would depend on the specific

workplace.

 In light of this testimony, the ALJ's complete analysis of the Plaintiff's ability to perform

his past relevant work amounted to three sentences:

> In comparing the claimant's residual functional capacity with the physical and
> mental demands of this work, I find that the claimant was able to perform it as
> actually and generally performed. The claimant's testimony led the testifying
> vocational expert to conclude that even if the claimant's RFC further restricted him
> to sedentary work, he would remain capable of performing this past work. The
> claimant retains the skills and mental capacity to execute the duties of the job.

(Decision Denying Benefits 18–19.) Under the requirement that the ALJ specify the duties of the

past relevant work and analyze whether the Plaintiff can actually perform those specific tasks,

*see Nolen*, 939 F.2d at 519, this is insufficient.

 Counsel for the Plaintiff elicited testimony about duties involved in being a 911

dispatcher. The VE testified that a 911 dispatcher would need to have good concentration. As

17

discussed above, there was evidence in the record that sleep apnea, obesity, fatigue, and medications affected the Plaintiff's concentration. Yet the ALJ did not discuss whether the Plaintiff could perform the duties of a 911 dispatcher in light of the job's concentration requirement. Further, the VE testified that a 911 dispatcher would need to be able to act quickly under stressful situations. The Plaintiff has been diagnosed with a stress disorder. Yet the ALJ did not analyze whether the Plaintiff's stress disorder would affect his ability to perform the duties of a 911 dispatcher. Moreover, the VE testified that needing frequent bathroom breaks could impact an individual's ability to be a 911 dispatcher. The ALJ noted in her Decision the Plaintiff's testimony that he is prescribed Lasix, a "water pill" used to treat fluid retention. Yet the ALJ did not analyze whether the Plaintiff could still perform the duties of a 911 dispatcher while frequently using the bathroom.[5]

The Defendant cites *Crawford v. Astrue*, 633 F. Supp. 2d 618, 638 (N.D. Ill. 2009), for the principle that "vocational expert testimony satisfies [the] requirement for comparison with demands of past work as generally performed." (Mem. in Supp. 10, ECF No. 23.) But as the Plaintiff correctly replies, the VE in *Crawford* testified about the demands of the past relevant work as generally performed in the national economy, and counsel for the plaintiff apparently did not challenge the VE's testimony. By contrast, counsel for the Plaintiff in this matter cross examined the VE and drew out several additional job requirements for a 911 dispatcher beyond

---

[5]The VE also testified that a 911 dispatcher would need good bilateral use of the hands. As discussed in a prior footnote, it appears that, as part of her RFC analysis, the ALJ relied on the opinions of two Disability Determination Service medical consultants in finding that the Plaintiff had "normal ability to perform fine and gross manipulative activities." (Decision Denying Benefits 18.) Nevertheless, in light of the VE's testimony about the need for good use of the hands to be a 911 dispatcher, the ALJ should have discussed her finding that the Plaintiff could perform the manipulative activities required for the job.

those covered by the ALJ in her direct examination of the VE. It was the ALJ's duty to address these additional duties and analyze the Plaintiff's ability to perform them. Her failure to do so merits a remand. *See Smith*, 388 F.3d at 252; *see also Getch*, 539 F.3d at 481–82 (remanding because of the ALJ's failure to completely compare duties of past relevant work with the claimant's ability to perform them).

### E.      Alleged Failure to Properly Assess Credibility

The Plaintiff argues, fifth, that the ALJ's analysis of his credibility is deficient. Specifically, the Plaintiff points to the ALJ's unhelpful boilerplate language, evaluation of RFC before credibility, focus on objective evidence to the exclusion of subjective complaints of pain, over-reliance on daily activities, failure to explain her reference to the Plaintiff's improvement, and failure to consider factors that increase the Plaintiff's credibility. The Defendant responds that reliance on boilerplate language is not fatal, that the Plaintiff has failed to show that the ALJ's credibility determination was patently wrong, and that the "Plaintiff points to no instance in which the ALJ erred in evaluating his credibility." (Mem. in Supp. 9.) The Plaintiff replies that the Defendant's response "is inaccurate as Plaintiff set forth numerous factual and legal errors which the Commissioner declined to address." (Reply 13.)

In assessing a claimant's credibility, the ALJ is required to support his finding with specific reasons, *see Villano*, 556 F.3d at 562, and reviewing courts defer to that determination unless it is found "patently wrong," *Prochaska*, 454 F.3d at 738. When questioning an applicant's credibility as to symptoms of pain, the ALJ must follow specific requirements set forth in SSR 96-7p. First, the ALJ decides whether the claimant has an underlying medically

19

determinable physical or mental impairment that could reasonably be expected to produce the pain. *See* SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If such an impairment exists, but the claimant's statements about the intensity, persistence and limiting effects of the pain are not supported by objective medical evidence, the ALJ evaluates the effects of the complained-of pain on the individual's functional ability to work, taking into account the claimant's daily activities; his past work history and efforts to work; the dosage, effectiveness, and side effects of medication; the nature and intensity of the reported pain; medical evidence from treating physicians and third parties; medical evidence and laboratory findings; and the course of treatment. SSR 96-7p; 20 C.F.R. § 404.1529(c); *see also Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Although an ALJ may not ignore a claimant's subjective reports of pain or mental impairments simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *See Sienkiewicz*, 409 F.3d at 803–04.

Here, the ALJ made the following credibility determination:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> In terms of the claimant's allegations concerning his severe impairments, the claimant is found to be not fully credible.

(Decision Denying Benefits 17.) The ALJ supported her credibility assessment with reference to, *inter alia*, the "documented improvement of the conditions that has historically caused the

claimant's pain" (*id.* 17–18), and the Plaintiff's daily activities.

The Court agrees with the Plaintiff that the ALJ did not adequately assess his credibility. First, the ALJ relied upon boilerplate language in stating that she found the Plaintiff's testimony concerning his severe impairments "not fully credible." Such language contains "no explanation of which . . . statements are not entirely credible or how credible or noncredible any of them are." *Martinez*, 630 F.3d at 696. *See also Parker*, 597 F.3d at 922 ("The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony."). Second, the ALJ called the Plaintiff's statements about his limitations "not credible to the extent they are inconsistent with the above residual functional capacity assessment." But as the Seventh Circuit has noted concerning identical boilerplate language: "[T]he assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). The ALJ's "boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be." *Id.* at 645–46.

Third, the ALJ's credibility determination relied on the Plaintiff's description of his daily activities. The Seventh Circuit has frequently criticized ALJs for over-reliance on testimony about daily activities because the demands of the workplace are different from the demands of daily living. As the *Bjornson* court stated: "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the

21

former than the latter, can get help from other persons . . . , and is not held to a minimum

standard of performance, as she would be by an employer. The failure to recognize these

differences is a recurrent, and deplorable, feature of opinions by administrative law judges in

social security disability cases." 671 F.3d at 647. *See also Spiva v. Astrue*, 628 F.3d 346, 352

(7th Cir. 2010) ("[A]n ability to engage in 'activities of daily living' (with only mild limitations)

need not translate into an ability to work full time."). Moreover, daily activities more demanding

than those listed by the Plaintiff have been found to be consistent with disability. *See Gentle v.

Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005) ("[T]aking care of an infant, although

demanding, has a degree of flexibility that work in the workplace does not."); *see also Zurawski*,

245 F.3d at 887 (basic household activities do not "undermine[] or contradict[] a claim of

disabling pain"). The ALJ did not explain why she believed the Plaintiff's limited activities

(occasional vacuuming, dusting, and mowing the yard with a riding lawn mower) contradicted

his testimony that he could not walk, stand, or sit for extended periods of time.

Fourth, the ALJ stated that the Plaintiff's testimony about his limitations was not

consistent with "the documented improvement of the conditions that has historically caused the

claimant's pain." (Decision Denying Benefits 17–18.) The ALJ does not explain what

improvements she means. As the Plaintiff notes, the only improvement in the medical record is

improvement to his right shoulder after surgery. Further, mere improvement without explanation

of how the improvement contributes to an ability to work does not establish ability to work. *See

Tate v. Long Term Disability Plan*, 545 F.3d 555, 561 (7th Cir. 2008), *abrogated on other

grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), ("[A doctor's]

general conclusion that medication has provided 'significant benefit' to [the claimant] does not

prove anything unless the improvement is shown to be connected in some rational way to her ability to work."). The ALJ may have been referring to the Plaintiff's weight loss, but, as discussed above, the ALJ made no reference to obesity in her RFC analysis.

Fifth, the ALJ did not consider factors which could bolster the Plaintiff's credibility. The Plaintiff's strong pain medications, including Vicodin, may strengthen credibility. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (discussing, *inter alia*, Vicodin). The Plaintiff's long work record (over 17 years as a dispatcher) may also strengthen credibility. *See Aidinovski v. Apfel*, 27 F. Supp.2d 1097, 1104 (N.D. Ill. 1998) (finding a prior work record of 11 years favorable to a claimant's credibility). Further, one of the reviewing physicians noted that the Plaintiff "appears credible." (Physical RFC Assessment, ECF No. 25 at 424.) Observations by agency employees are to be considered in evaluating the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3). Yet the ALJ did not discuss any of these factors.

For all these reasons,[6] the Court finds that more specific findings are needed. The Defendant insists that the ALJ's reliance on boilerplate is not fatal when the ALJ "adequately evaluated . . . credibility." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). The Defendant's statement is correct, but it is not helpful to his position because the Court finds that the ALJ did not adequately evaluate the Plaintiff's credibility. The Court will, therefore, remand for the ALJ to make a credibility determination consistent with this Opinion and Order.

---

[6]The Plaintiff also criticizes the ALJ's credibility assessment for an over-reliance on objective evidence. While it is true that an "ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), it appears that the ALJ considered other reasons, including opinion evidence and the Plaintiff's testimony. Thus, the Court is not persuaded by this section of the Plaintiff's argument.

**F.      Alleged Failure to Set Forth a Logical Bridge Between the Evidence and the RFC**

The Plaintiff argues, sixth, that the ALJ failed to build a logical bridge between the evidence of record and her RFC determination. The Defendant does not respond to the specific arguments raised by the Plaintiff in this section.

"The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions." *Terry*, 580 F.3d at 475 (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). For many of the reasons discussed above, the Court agrees with the Plaintiff that the ALJ's Decision fails to provide the requisite logical bridge. It appears the ALJ relied on the Plaintiff's "documented improvement" without specifying what improvement she meant, or how any improvement affected the Plaintiff's ability to work. Further, the ALJ's boilerplate credibility determination does not indicate which statements she found to be not fully credible. She also stated that the Plaintiff's own testimony supported his ability to "perform the prolonged walking, standing and sitting for light work activity." (Decision Denying Benefits 18.) But the Plaintiff testified to just the opposite—that he could not walk more than half a block, could not stand for more than 5 minutes continuously, and could not sit for more than 15–30 minutes continuously. The ALJ did not explain why she believed the Plaintiff's testimony supported her conclusion. Finally, the ALJ's reference to the objective evidence appears to be inaccurate. She states that the record indicates an absence of "neural foraminal compromise" (*id.*), but as the Plaintiff notes, magnetic resonance imaging showed "mild to moderate bilateral foraminal stenosis" (Cleveland Clinic Imaging Institute Report, ECF No. 25 at 549). For all these reasons, as well as those discussed above, the Court finds that remand is appropriate because the ALJ failed to set forth a

24

logical bridge between the evidence and her conclusions.

**G.        Alleged Failure to Properly Assess the Listings at Step Three**

Finally, the Plaintiff argues that the ALJ failed in her step three listing assessment. The

Defendant offers no response to the Plaintiff's listing argument.

In step three of her analysis, the ALJ considered the Plaintiff's congestive heart failure

and found that it did not meet or equal a listing under Listings 107.00(A) and 107.05(E) because

no evidence suggested the Defendant's congestive heart failure arose from sickle cell anemia, as

required by those listings. She did not consider obesity in connection with this listing analysis

because of the clear lack of reference to sickle cell anemia in the record. The ALJ then outlined

the many ways that obesity can affect other listing conditions, but concluded with the following

determination, not specific to obesity: "Based on the discussion above, the claimant's

impairments, whether considered individually or in combination, do not meet or medically equal

any listings." (Decision Denying Benefits 16.)

The Plaintiff notes that the ALJ's reference to Listings 107.00(A) and 107.05(E) is

incorrect. Those listings fall under Part B of the Listing of Impairments Appendix. The

introduction to Part B states: "Medical criteria for the evaluation of impairments of children

under age 18." 20 C.F.R. Pt. 404, Supt. P, App. 1, Listing of Impairments, Part B. As the ALJ

noted in her Decision, the Plaintiff was 62 years old at the time of the hearing. Thus, the ALJ

was incorrect to apply Listings 107.00(A) and 107.05(E) to the Plaintiff's congestive heart

failure. Her analysis of whether his severe congestive heart failure meets or equals a listing

depends completely upon her erroneous reference to Listings 107.00(A) and 107.05(E) and their

discussion of sickle cell anemia. Because the ALJ applied the wrong listings,[7] the ALJ's decision cannot stand. *See Kastner v. Astrue*, 697 F.3d 642, 650–51 (7th Cir. 2012) (remanding because of a failure in listing analysis).

Further, the ALJ was required to evaluate whether the Plaintiff had "an impairment that, in combination with obesity, meets the requirements of a listing," and whether the Plaintiff had "multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." SSR 02-1p, 2002 WL 34686281, at *5. Based on the ALJ's incorrect application of Listings 107.00(A) and 107.05(E), it is not clear from the record whether the ALJ considered the Plaintiff's obesity in combination with his congestive heart failure, as required by SSR 02-1p.

The Plaintiff also argues that the ALJ failed to properly assess whether his musculoskeletal problems combined with his obesity equaled Listing 1.04. "[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). As noted above, the Defendant provides no response to this argument by the Plaintiff. The Court finds that, in light of the ALJ's perfunctory analysis of the listings, a remand is appropriate on this point as well.

For the reasons discussed, the Court will remand for a step three analysis consistent with this Opinion and Order.

---

[7]The Plaintiff correctly states that, under the Part A adult listings,  Listings 4.00(D) and 4.02 discuss chronic heart failure, a long term form of congestive heart failure. Listing 4.00(D)(2)(b)(i) states that "[s]ymptoms of congestion or of limited cardiac output include easy fatigue, weakness, shortness of breath . . ., cough, or chest discomfort at rest or with activity." Further, Listing 4.00(D)(2)(b)(ii) lists edema as another sign of congestion. On remand the ALJ should evaluate whether the Plaintiff's conditions, together or in combination, meet or equal these or any other appropriate listings.

**CONCLUSION AND ORDER**

For the reasons stated above, the Court REMANDS this matter to the ALJ for further proceedings consistent with this Opinion and Order, specifically as it relates to the step three listing decision, the step four RFC determination, and the step four comparison of RFC with the Plaintiff's past relevant work.

SO ORDERED on August 16, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

27